UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRI LAMBERT                                          CIVIL ACTION

VERSUS                                                 No. 06-8215

STATE FARM FIRE AND CASUALTY COMPANY                   SECTION:  I/3

ORDER AND REASONS

Before the Court are the following motions filed on behalf of defendant, State Farm Fire and Casualty Company ("State Farm"):

(1) Motion for partial summary judgment requesting that State Farm receive an offset for flood payments and that plaintiff be estopped from asserting wind claims pursuant to her homeowner's insurance policy.[1]  The motion is **DENIED**.

(2) Motion for partial summary judgment requesting that the Court find that plaintiff is not entitled to a fifty-percent (50%) penalty and attorneys' fees pursuant to the amended version of La. Rev. Stat. Ann. § 22:658.[2]  The motion is **GRANTED**.

(3) Motion for partial summary judgment asserting that plaintiff is not entitled to recover insurance proceeds pursuant to Coverage "B" of the homeowner's insurance policy.[3]  The motion is **DENIED**.

(4) Motion for partial summary judgment asserting that

---

[1]Rec. Doc. No. 26.

[2]Rec. Doc. No. 27.

[3]Rec. Doc. No. 69.

plaintiff is not entitled to recover damages for mental anguish.[4] The motion is **GRANTED IN PART** and **DENIED IN PART**.

(5) Motion *in limine* to exclude the report and testimony of plaintiff's expert, Steve Hitchcock.[5]  The motion is **DEFERRED** until trial.

<u>**BACKGROUND**</u>

Plaintiff, Terri Lambert ("Lambert"), owns a home located at 418 Moonraker Drive, Slidell, LA 70458, which was damaged when Hurricane Katrina made landfall on August 29, 2005.[6]  Prior to August 29, 2005, State Farm issued a homeowner's insurance policy[7] (the "homeowner's policy") to Lambert which provided $198,600.00 in building structure coverage, $148,900.00 in contents coverage, and $19,860.00 in dwelling extension coverage.[8]  Also prior to August 29, 2005, State Farm, in its capacity as a Write Your Own ("WYO") insurer, issued a Standard Flood Insurance Policy ("SFIP")[9] to Lambert pursuant to the National Flood Insurance Program ("NFIP").[10]

---

[4]Rec. Doc. No. 79.

[5]Rec. Doc. No. 94.

[6]Rec. Doc. No. 1-2, p. 3, para. III.

[7]The homeowner's policy number is 18-CA-6736-2.  Rec. Doc. No. 1-2, p. 3, para. II.  The policy provided coverage for damages caused by wind.  Rec. Doc. No. 26-3, Statement of Uncontested Material Facts.

[8]Rec. Doc. No. 1-2, p. 3, para. II.

[9]The SFIP number is RK-8433-8.  Rec. Doc. No. 26-3, p. 1, para. 2.  The policy provided coverage for damages caused by flood waters.  *Id.*

[10]Rec. Doc. No. 26-2.

As a result of the damage to her home caused by Hurricane Katrina, Lambert filed insurance claims pursuant to her homeowner's policy and her SFIP.[11]  In response to those claims, State Farm inspected Lambert's home.[12]  Thereafter, State Farm paid Lambert $29,932.38 under her homeowner's policy for wind damage to Lambert's home and $190,185.76 under the SFIP for flood damage to Lambert's home and contents.[13]

On August 31, 2006, Lambert filed a lawsuit in state court alleging that State Farm breached the terms of the homeowner's policy by underpaying Lambert for wind damage to her home and contents.[14]  Lambert claims that, as a result of State Farm's alleged conduct, she has sustained multiple damages, which include: (a) past, present, and future mental anguish and distress, (b) underpayment of the reasonable cost of repairs to her home, (c) nonpayment for damages to the contents of her home, and (d) nonpayment of the appropriate amount for additional living expenses.[15]  Lambert also claims that State Farm's alleged conduct

---

[11]Rec. Doc. No. 26-3, pp. 1-2, paras. 3-4.

[12]*Id.*

[13]*Id.*  Pursuant to the SFIP, State Farm issued Lambert $155,185.76 for flood damage to her home and $35,000.00 for flood damage to her contents.  *See* Rec. Doc. No. 69-7.

[14]Lambert alleges that she was underpaid under the homeowner's policy in the amount of $35,100.00 for damages to her home and other structures, $29,800.00 for lost contents located in her home and other structures, and $9,600.00 in unpaid additional living expenses.  *Id.* at p. 4, para. VII.

[15]*Id.* at p. 5, para. XI.

was arbitrary and capricious and, therefore, Lambert is entitled to recover statutory penalties, interest, and attorneys' fees pursuant to Louisiana Revised Statutes 22:658 and 22:1220.[16]   State Farm removed Lambert's lawsuit to this Court on October 16, 2006.[17]

## LAW AND ANALYSIS

### I.   STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).[18]  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn*

---

[16]*Id.* at p. 4, para. X.

[17]Rec. Doc. No. 1.April 30, 2008

[18] The *Federal Rules of Civil Procedure*, including Rule 56, were amended on December 1, 2007, in order to make the rules "more easily understood and to make style and terminology consistent throughout."  Fed. R. Civ. P. 56 advisory committee's note (2007 Amendment).  The changes "are intended to be stylistic only," rather than substantive.  *Id.*

*Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

II.  **DISCUSSION**

   A. **FLOOD OFFSET AND ESTOPPEL**

   With respect to its first motion for partial summary judgment, State Farm asks the Court to find that Lambert is: (1) not entitled to "double recovery" and that State Farm is, therefore, entitled to an offset or credit for the payments already made pursuant to Lambert's SFIP; and (2) estopped from asserting that wind caused Lambert's losses because she accepted payments for flood damage pursuant to her claim under the SFIP.[19]

   With respect to State Farm's assertion that Lambert is not entitled to "double recovery," it is a well established legal principle that insurance contracts are contracts of indemnity and that an insured cannot recover for the same loss twice. *See, e.g., Weiss v. Allstate Ins. Co.,* 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.); *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1080 (La. 1992) ("As a general rule, the claimant may recover under all available coverage provided that there is no double recovery."); *Wright v. Assurance Co. of Am.*, 728 So. 2d 974, 975 (La. App. 2 Cir. 1999).

   State Farm argues that it is entitled to an offset, or credit, for the amount previously paid pursuant to Lambert's SFIP.[20]  State Farm asserts that, based on the aforementioned credit or offset,

---

[19]Rec. Doc. No. 26-2.

[20]Rec. Doc. No. 26, p. 1.

-6-

Lambert's recovery in this case, if any, should be limited to the difference between the pre-storm value of Lambert's property and the amount paid Lambert pursuant to her SFIP.[21]

Lambert is "entitled to recover in this lawsuit any *previously uncompensated* losses that are covered by [her] homeowner's policy *and which when combined with [her] flood proceeds do not exceed the value of* [her] *property*."[22] *Esposito v. Allstate Ins. Co.*, 2007 WL 1125761, at *2 (E.D. La. Apr. 16, 2007) (Zainey, J.). Therefore, "[t]he well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss support the result State Farm seeks only if the facts as to the value of [Lambert's] home and contents and the cause of their total loss are resolved in State Farm's favor." *See, Broussard v. State Farm Fire & Cas. Co.*, 2007 WL 2264535, at *5 (E.D. La. Aug. 2, 2007) (Vance, J.).

State Farm has failed to present any admissible summary judgment type evidence which conclusively establishes the value of Lambert's home and contents prior to Hurricane Katrina. Therefore, the Court cannot conclude, at this time, that Lambert's potential

---

[21]*Id.*

[22]The Court notes that Lambert argues that her maximum potential recovery in this case is not determined by the pre-storm value of her property, but rather by the cost of repairing covered losses up to the limits of coverage under the policy. Rec. Doc. No. 41, p. 11, n. 7. Her argument notwithstanding, Lambert may only recover losses previously uncompensated under the homeowner's policy which, when combined with SFIP proceeds, **do not exceed the value of the damaged property**. *Esposito v. Allstate Ins. Co.*, 2007 WL 1125761, at *2 (E.D. La. Apr. 16, 2007) (Zainey, J.) (emphasis added).

recovery is limited to a specific amount of damages. *See Broussard*, 2007 WL 22645356, at *5 ("The Court is therefore not presented with undisputed evidence that conclusively establishes the value of plaintiffs' home and contents . . . Thus, on this record, the Court cannot find as a matter of law that plaintiffs are limited to a specific recovery based on the defendant's asserted valuation of plaintiffs' property.").

With respect to State Farm's estoppel argument, Lambert is not estopped from making a wind claim pursuant to her homeowner's policy.[23]  *See Broussard*, 2007 WL 2264535, at *4;[24] *Wellmeyer v. Allstate Ins. Co.*, 2007 WL 1235042, at *2 (E.D. La. Apr. 26, 2007) (Feldman, J.) ("[N]othing bars the [plaintiffs] from collecting under their homeowner's policy for wind damage and from collecting under their policy for flood damage if they can segregate and prove the two types of damages."); *Ferguson v. State Farm Ins. Co.*, 2007

---

[23]The Court notes that Lambert asserts that she is entitled to recover any amount up to the limit of her homeowner's policy. Lambert is not asserting a total loss under the homeowner's policy.  *See Broussard*, 2007 WL 2264535, at *4.

[24]In *Broussard*, Judge Vance stated:

> [N]o policy provision or legal principle prevents plaintiffs from recovering for previously uncompensated, covered damage, without reference to the amount received under their flood policy, so long as the combined recovery does not exceed the value of their property.
> Moreover, State Farm's estoppel argument (whether equitable or judicial in nature) fails because the mere receipt of payments under plaintiffs' flood policy does not, without more, amount to a representation that plaintiffs' damage was caused exclusively by water such that their recovery must be limited accordingly.

*Broussard*, 2007 WL 2264535, at *4 (citation omitted).

WL 1378507, at *2 (E.D. La. May 9, 2007) (Berrigan, J.) (finding that the plaintiffs were not estopped from making a claim pursuant to their homeowner's policy, despite the fact that the plaintiffs received full flood policy limits pursuant to their flood policy).

Lambert argues that she was overpaid SFIP proceeds for flood damage that did not exist and, as such, the Court should disregard State Farm's previous SFIP payments and the trier of fact should be permitted to independently determine the extent to which wind caused the damage to Lambert's property.[25] Lambert also argues that the "collateral source rule"[26] precludes State Farm from receiving credit for SFIP payments to the extent that those payments were used to compensate Lambert for perils covered by her homeowner's policy.[27]

---

[25]Rec. Doc. No. 41, p. 6.

[26]The Louisiana Supreme Court adopted the collateral source rule from the Restatement (Second) of Torts § 920A (1979), which provides:

> (1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
> (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm from which the tortfeasor is liable.

*Metoyer v. Auto Club Family Ins. Co.*, 536 F.Supp.2d 664, 667, n. 2 (E.D. La. 2008) (quoting Restatement (Second) of Torts § 920A (1979)).
The collateral source rule, as applied in Louisiana, provides that "a 'tortfeasor may not benefit . . . because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution.'" *Id.* (quoting *Bozeman v. State*, 879 So. 2d 692 (La. 2004)).

[27]*Id.* at p. 12.  The Court notes that State Farm argues that the primary purpose of the "collateral source rule" is tort deterrence and, therefore, the collateral source rule cannot be applied to a breach of contract case.  While the Louisiana Supreme Court has acknowledged that the collateral source rule

Lambert willingly accepted SFIP proceeds for damages to her home and contents and, in so doing, she "tacitly confirmed that the damages identified were caused by flood." *Mui v. State Farm Fire & Casualty Co.*, Civil Action No. 06-8238, (ECF)Rec. Doc. No. 29, pp. 3-4 (E.D. La. July 27, 2007) (Zainey, J.).  Although she is entitled to assert a claim pursuant to her homeowner's policy, Lambert "is not entitled to obtain a windfall double recovery by now re-characterizing as wind damage those losses for which [she] has already been compensated by previously attributing them to flood waters." *Esposito*, 2007 WL 1125761, at *2; *see also Mui*, Civil Action No. 06-8238, (ECF) Rec. Doc. No. 29, p. 4 ("Consistent with the rulings in cases like <u>Weiss</u>,[28] <u>Esposito</u>,[29] and <u>Ware</u>,[30] Plaintiffs cannot obtain a double recovery by reclassifying damages previously attributed to flood, and paid for under a flood policy,

---

is typically applied to tort cases, *see Bozeman*, 879 So. 2d at 697-98, at least one case in this district has stated that "there cannot be a blanket prohibition of the application of the collateral source rule to contract claims . . . ." *See Metoyer*, 536 F.Supp.2d at 669.

Regardless, the Court need not now determine the applicability of the collateral source rule.  The manner in which Lambert would apply the collateral source rule would permit her to recover insurance proceeds for the same loss twice and such double recovery is impermissible.  *See, e.g., Weiss v. Allstate Ins. Co.*, 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.); *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1080 (La. 1992) ("As a general rule, the claimant may recover under all available coverage provided that there is no double recovery."); *Wright v. Assurance Co. of Am.*, 728 So. 2d 974, 975 (La. App. 2 Cir. 1999).

[28]*Weiss v. Allstate Ins. Co.*, 2007 WL 891869 (E.D. La. March 21, 2007) (Vance, J.).

[29]*Esposito v. Allstate Ins. Co.*, 2007 WL 1125761 (E.D. La. April 16, 2007) (Zainey, J.).

[30]*Ware v. State Farm Fire & Casualty Co.*, Civil Action No. 06-4908, (ECF) Rec. Doc. No. 34 (E.D. La. May 2, 2007) (Zainey, J.).

-10-

as now being attributable to wind.").

   **B. LOUISIANA REVISED STATUTE §§ 22:658**[31]

   Concerning its second motion for partial summary judgment, State Farm argues that the amended version of Section 22:658 is not applicable to this case and, as such, Lambert is not entitled to recover a fifty-percent (50%) penalty or attorneys' fees.[32]  Section

---

[31]The Court notes that Lambert argues that the hearing on State Farm's motion concerning Section 22:658 should be continued in order to allow her to conduct additional discovery.  Rec. Doc. No. 29, p. 4.  Rule 56(f) of the Federal Rules of Civil Procedure provides:

   If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may:
   (1) deny the motion;
   (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
   (3) issue any other just order.

   "Rule 56(f) motions are 'broadly favored and should be liberally granted.'"  *Smith v. Louisiana State Police*, 2008 WL 782771, at *3 (E.D. La. March 20, 2008) (Berrigan, C.J.) (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)).  Although it is preferred that non-movants present an affidavit to support a continuance of discovery, there is no stringent procedure that will bar litigants access to further discovery."  *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).  "In order to trigger the rule[,] non-movants need only submit an 'equivalent statement preferably in writing' that conveys the need for additional discovery."  *Id.* (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).
   A non-movant seeking relief pursuant to Rule 56(f) must: (i) request discovery prior to the court's ruling on summary judgment; (ii) place the trial court on notice that further discovery pertaining to the summary judgment motion is being sought; and (iii) specifically demonstrate to the trial court how the requested discovery pertains to the pending motion. *Tonnas v. Stonebridge Life Ins. Co.*, 78 Fed. Appx. 966, 968 (5th Cir. 2003). Additionally, the non-movant "must have acted in a diligent fashion so as not to have put himself in the current position through inaction."  *Tonnas*, 78 Fed. Appx. at 968.
   Lambert fails to offer any specific facts which would support an argument that the discovery she is seeking is germane to the pending motion for summary judgment.  Lambert's vague assertion that she needs to take additional depositions of State Farm employees does not justify a continuance of either discovery or the hearing of State Farm's motion.  *Id.* (citing *SEC v. Spence & Greene Chem. Co.*, 612 F.2d 896, 900)).

   [32]Rec. Doc. No. 27.

22:658, as amended[33] and as previously enacted,[34] provides a penalty for bad faith failure to timely pay a claim.  In June, 2006, the Louisiana Legislature passed an amendment that increased the penalty recoverable under that section from twenty-five percent to fifty percent of the amount the claimant is owed and it reinstated a provision for reasonable attorney's fees and costs.  *See* 2006 La.

---

[33]Section 22:658(B)(1), as amended, provides, in pertinent part:

> Failure to make [the payments described in § 658] within thirty days after receipt of such satisfactory written proofs and demand therefore or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) [of § 658], respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) [of § 658], when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of loss, of **fifty percent** damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, **fifty percent** of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.  Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

[34]Section 22:658(B)(1), as previously enacted, provided, in pertinent part:

> Failure to make [the payments described in § 658] within thirty days after receipt of such satisfactory written proofs and demand therefore or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) [of § 658], respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) [of § 658], when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of loss, of **twenty-five percent** damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, **twenty-five percent** of the difference between the amount paid or tendered and the amount found to be due.

Acts No. 813 § 1.  These changes went into effect on August 15, 2006, and they do not apply retroactively.  *See, e.g., Sher v. Lafayette Ins.* Co., 2008 WL 928486, at *11 (La. April 8, 2008) ("The amendment [to Section 22:658] is unquestionably substantive, and as such cannot be applied retroactively."); *see also Ferguson v. State Farm Ins. Co.*, 2007 WL 1378507, at *3 (E.D. La. May, 9, 2007) (Berrigan, C.J.) (citing *Lewis v. State Farm Ins. Co.*, 946 So. 2d 708, 728-29 (La. App. 2 Cir. 2006)); *Weiss v. Allstate Ins. Co.*, 2007 WL 1017341, at *3 (E.D. La. March 28, 2007) (Vance, J.).

"[T]he law in effect at the time appellants' cause of action arose is the law which is applied to their case." *Aronson v. State Farm Fire & Cas. Co.*, 969 So. 2d 671, 681 (La. App. 4 Cir. 2007) (quoting *McDuffie v. ACandS, Inc.*, 781 So. 2d 623, 625 (La. App. 4 Cir. 2001)).  "[A]n insured's right to a penalty under § 658 comes into existence only after the insurer fails to pay a claim within thirty (30) days of receiving satisfactory proof of loss." *Madere v. State Farm Fire & Cas. Co.*, 2007 WL 1655553, at *2 (E.D. La. June 5, 2007) (Duval, J.).

An insurer's failure to pay is not a continuing obligation that exposes it to liability pursuant to the amended version of § 22:658; rather, the cause of action and, therefore, an insured's right to recover, comes into existence when and if the insurer fails to pay thirty days after receiving satisfactory proof of loss. *See, e.g., Sher*, 2008 WL 928486, at *9 ("[T]he claim for the

-13-

penalties contained within the statute arose *prior* to the effective date of the amendment.   Plaintiff's argument that Lafayette's continuing breach of the duty of good faith and fair dealing made it subject to the increased penalties contained in the amended version of R.S. 22:658 is without merit."); *Aronson*, 969 So. 2d at 681 ("Even though [the defendant's] failure to pay the [plaintiffs'] claims extended beyond the effective date of the 2006 amendments to [§ 22:658], their cause of action arose prior to the effective date."); *McKenney v. Allstate Ins. Co.*, 2007 WL 1139601, at *1 (E.D. La. April 16, 2007) (Berrigan, C.J.) (holding that the argument that Allstate's continuous violations and unreasonable denial of the claim exposed Allstate to liability pursuant to the amended version of § 22:658 was without merit).

Generally, a plaintiff's cause of action can arise in one of three ways:  (1) when the complaint is filed if satisfactory proof of loss was not provided prior to the filing of the complaint; (2) when the plaintiff provides satisfactory proof of loss and the defendant fails to pay; or (3) when, after the plaintiff has provided satisfactory proof of loss and has been paid for some damage, new damage is discovered, satisfactory proof of loss is provided the defendant after such discovery, and the defendant fails to pay.  *See Sher*, 2008 WL 928486, at *9.

Only the second way in which a cause of action pursuant to

Section 22:658 can arise is applicable to this case.[35]  The Court notes, however, that neither party states the specific date that State Farm received Lambert's proof of loss.[36]  Nevertheless, Lambert alleges in her petition, which was filed in state court on August 31, 2006, that, after receiving a satisfactory proof of loss, State Farm failed to pay her the proceeds to which she was entitled under her homeowner's policy within sixty (60) days.[37] Accordingly, giving Lambert the benefit of the doubt, the latest date that State Farm received Lambert's proof of loss was, July 1, 2006, i.e., sixty-one (61) days prior to the date that Lambert filed her lawsuit.

The latest date that Lambert's cause of action pursuant to Section 22:658 could have arisen was, July 31, 2006, i.e., thirty (30) days after State Farm allegedly received Lambert's proof of loss, which was before the August 15, 2006, date that the amendment providing for attorneys' fees and a fifty-percent penalty went into effect.  Accordingly, Lambert's recovery pursuant to Section 22:658

---

[35]For purposes of deciding this summary judgment motion, the first way in which a cause of action pursuant to Section 22:658 can arise is not applicable because Lambert specifically alleges that she provided State Farm with a satisfactory proof of loss.  Rec. Doc. No. 1-2, p. 4, para. IX.  The third way in which a cause of action pursuant to Section 22:658 can arise is not applicable because neither party asserts that Lambert provided State Farm with additional proofs of loss for damages discovered after she submitted her initial proof of loss.

[36]In her memorandum in opposition, Lambert claims that she presented State Farm with a wind estimate in April, 2007.  Rec. Doc. No. 29, p. 2. However, Lambert fails to provide any admissible summary judgment evidence supporting her claim.

[37]Rec. Doc. No. 1-2, p. 4, para. IX.

is limited to a twenty-five-percent penalty.

 C. **<u>COVERAGE "B"</u>**

 With respect to its third motion for partial summary judgment, State Farm argues that Lambert has failed to carry her burden of proof with respect to the losses insured by Coverage Provision "B" ("Coverage 'B'") of her homeowner's policy and, as such, the Court should dismiss any and all claims that Lambert asserts pursuant thereto.[38]

 Coverage "B," which pertains to Lambert's personal property, i.e., contents,[39] "is a 'named peril' policy, providing coverage for 'accidental direct physical loss,' on a named specific peril basis."[40] *See, e.g., Ferguson*, 2007 WL 1378507, at *2. "Under a named peril policy, the plaintiffs are required to prove by a preponderance of the evidence that their personal property was lost or damaged due to a specified covered risk named in the policy." *Id*. "Should the plaintiffs meet this threshold requirement, the burden then shifts to the insurer to prove the applicability of any asserted exclusion[41] by a preponderance of the evidence . . . ."

---

[38]Rec. Doc. No. 69.

[39]Coverage "B" provides coverage for "personal property owned or used by an insured while it is anywhere in the world." Rec. Doc. No. 69-5, p. 6, Section I - Coverages, Coverage B - Personal Property.

[40]*See* Rec. Doc. No. 69-5, p. 11, Section I - Losses Insured, Coverage B - Personal Property.

[41]"'Any exclusion from coverage in an insurance policy must be clear and unmistakable . . .' [and] the degree of proof required to avoid liability under a contractual obligation must be certain and decisive." *Ferguson*, 2007 WL 1378507, at *2 (quoting *Landry v. Louisiana Hosp. Serv., Inc.*, 449 So. 2d

*Id.*

State Farm argues that Lambert has failed to meet her threshold burden of proof because (1) she cannot establish that her personal property was damaged by a covered risk, namely a windstorm,[42] and (2) she has not provided State Farm with an inventory of personal property damaged by wind, thereby establishing the extent of her loss.[43]

Concerning State Farm's argument that Lambert cannot establish that her personal property was damaged by a windstorm, Lambert has presented her neighbor's, Gerald C. Sciacca's ("Sciacca"), sworn testimony that Lambert's home and surrounding property were damaged by wind before flood water entered the area.[44]  Sciacca's testimony

---

584, 586 (La. App. 1 Cir. 1984); *Ferro v. Gebbia*, 252 So. 2d 545, 547 (La. App. 4 Cir. 1971)).

[42]Although windstorm is a peril covered by Lambert's homeowner's policy, it does not include:

> [L]oss to property contained in a building caused by rain, snow, sleet, sand, or dust.  This limitation does not apply when that direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

Rec. Doc. No. 69-5, p. 11, Section I - Losses Insured, Coverage B - Personal Property, para. 2.

[43]Rec. Doc. No. 69-2, pp. 11, 13.

[44]During his deposition, Sciacca provided the following testimony:

Q:   Now its been reported by Ms. Lambert that you saw a funnel cloud take out her garage and smash into her back wall that's seen on Exhibit 1, Picture D.

(BREAK IN TRANSCRIPT FOR OBJECTION)

A:   Well, I'm going to tell you what I saw.  When those buildings blew apart and came across the canal, her garage was already gone. That's - when I looked over there, it looked empty.  I said gee,

is proper summary judgment evidence sufficient to raise a genuine issue of material fact concerning whether the damage to Lambert's personal property, for which Lambert has not received any insurance proceeds, was caused by wind.[45]

With respect to State Farm's argument that Lambert cannot establish the extent of her loss because she has not produced an inventory of damaged personal property, Lambert has attached to her memorandum in opposition to this motion an authenticated inventory[46] of personal property that she asserts was damaged by wind.  The inventory is proper summary judgment evidence sufficient to raise a genuine issue of material fact concerning the extent of wind

---

> I'm thinking to myself, something don't look right.  That's why I could see the debris so clear, because there wasn't anything obstructing my view.

Q:   But you didn't see what caused any loss to her garage?

A:   Well, it wasn't the water coming out of the canal, because it had just been in my boathouse at that point.  I can tell you that.

Q:   You didn't see what caused the loss to her garage, yes or no?

(BREAK IN TRANSCRIPT FOR OBJECTION)

A:   Did I see what hit her garage or see what damaged it?  Well, I don't want to make any assumptions or anything, but I'm going to say the wind did it.  You can't see the wind.  You can feel it, because the water was still in the canal and the garage was gone . . . .

Rec. Doc. No. 74-2, pp. 4-5, (Sciacca Dep. pp. 42-43).

[45]Sciacca's testimony does not raise a genuine issue of material fact as to the cause of damage to personal property for which Lambert previously received SFIP proceeds.  As previously stated, the acceptance of SFIP proceeds for damaged property is a tacit confirmation that the damage identified was caused by flood waters.  *Mui v. State Farm Fire & Casualty Co.*, Civil Action No. 06-8238, (ECF)Rec. Doc. No. 29, pp. 3-4 (E.D. La. July 27, 2007) (Zainey, J.).

[46]*See* Rec. Doc. No. 85-4, Ex. 4 (Lambert's Inventory); Rec. Doc. No. 84-5, Ex. 5 (Lambert's Affidavit).

-18-

damage to Lambert's personal property. Accordingly, summary judgment is not appropriate with respect to Lambert's Coverage "B" claims.

### D. **MENTAL ANGUISH**

With respect to its fourth motion for summary judgment, State Farm argues that Lambert is not entitled to recover damages for mental anguish because (1) she cannot establish a claim pursuant to Louisiana Civil Code Article 1998[47] and (2) the Louisiana Supreme Court's decision in *Sher v. Lafayette Ins. Co.*, 2008 WL 928486 (La. April 8, 2008), leaves no room for an alternative basis to recover damages for mental anguish pursuant to La. Rev. Stat. Ann. § 22:1220.[48]

Concerning State Farm's first argument, Lambert concedes that she is not seeking damages for mental anguish pursuant to Article

---

[47]Louisiana Civil Code Article 1998 provides:

Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

[48]Rec. Doc. No. 79-2, p. 8.

Section 22:1220 provides, in pertinent part:

An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

1998.[49]  Therefore, State Farm is entitled to judgment as a matter of law with respect to that article.

Concerning State Farm's second argument, the Louisiana Supreme Court in *Sher* did not hold that plaintiffs in similar lawsuits are precluded from recovering damages for mental anguish pursuant to Section 22:1220.  The Court simply held that the plaintiff in that case failed to provide sufficient evidence to recover mental anguish damages pursuant to Article 1998.  *See, Sher*, 2008 WL 928486, at *13-14.

Prior to *Sher*, however, courts repeatedly held that damages for mental anguish are recoverable pursuant to Section 22:1220. *See, e.g., Bowers v. State Farm Fire & Casualty Co.*, 2007 WL 2670087, at *1 (E.D. La. Sept. 7, 2007) (Berrigan, C.J.) (citing *Faust v. State Farm Fire & Casualty Co.*, 2007 WL 1191163 (E.D. La. April 20, 2007) (Vance, J.); *Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 474 (E.D. La. 2007) (Vance, J.)); *Orellana v. Louisiana Citizens Prop. Ins. Corp.*, 972 So. 2d 1252, 1254-56 (La. App. 4 Cir. 2007).  Therefore, Lambert may assert claims for mental anguish damages pursuant to Section 22:1220.

State Farm, alternatively, argues that, even if damages for mental anguish are recoverable pursuant to Section 22:1220, Lambert fails to present sufficient evidence to establish a claim for mental anguish damages pursuant to that section.[50]  Specifically,

---

[49]Rec. Doc. No. 98-3, p. 3.

[50]Rec. Doc. No. 79-2, p. 8.

State Farm asserts that Lambert cannot sustain a mental anguish claim because she fails to name medical professionals who will testify on her behalf or produce medical records that document her alleged mental anguish.[51]

Lambert need not present expert testimony or extrinsic evidence in order to substantiate her mental anguish claim. *See Laurents v. Louisiana Mobile Homes, Inc.*, 689 So. 2d 536, 542 (La. App. 3 Cir. 1997) ("Expert testimony is not required to prove mental anguish") (citing *Dowden v. Mid State Sand & Gravel Co. Inc.*, 664 So. 2d 643 (La. App. 3 Cir. 1995)); *see also Global ADR, Inc. v. City of Hammond*, 2004 WL 1576674, at *3 (E.D. La. July 12, 2004).  For summary judgment purposes, Lambert's testimony, alone, is sufficient to allow her mental anguish claims, pursuant to Section 22:1220, to go forward.[52]  *See Brady v. Fort Bend County*, 145 F.3d 691, 720 (5th Cir. 1998).

### E. **MOTION *IN LIMINE*: STEVE HITCHCOCK**

With respect to its motion *in limine*, State Farm seeks to

---

[51]*Id.* at p. 10.

[52]Lambert states the following in a sworn affidavit:

(1) As a result of State Farm's bad faith handling of her property claims, Lambert has suffered from anxiety, sleeplessness, stress, depression, confusion, and severe inconvenience; and
(2) Lambert was hospitalized in February 2006, for a stomach ulcer which she believes was a direct result of the failure of State Farm to properly and timely adjust her claims.

Rec. Doc. No. 92-2, Ex. 1.

The Court notes that Lambert's allegation that a condition such as a stomach ulcer was caused by mental anguish about the claims process must be supported by medical testimony in order to be admissible.

-21-

exclude the expert reports and testimony of Steve Hitchcock ("Hitchcock"), Lambert's public adjuster.[53]  State Farm argues that Hitchcock's May 24, 2007, narrative damage report should be excluded as untimely.[54]  State Farm further argues that Hitchcock's supplemental narrative damage report,[55] which was timely submitted, and his purported expert testimony should be excluded because: (1) Hitchcock is not an expert qualified to testify as to the cause of Lambert's damage;[56] (2) the methodologies relied upon by Hitchcock are unreliable;[57] and (3) Hitchcock's opinions are not based on

---

[53]Rec. Doc. No. 94-2.  Hitchcock is listed in Lambert's witness and exhibit list as an expert in private adjustment and construction costs.  Rec. Doc. No. 14.  Lambert hired Hitchcock to evaluate the cost of rebuilding Lambert's garage and dwelling.  Rec. Doc. No. 94-2, p. 2.

[54]State Farm claims that it did not receive Hitchcock's May 24, 2007, narrative damage report until April 11, 2008, well after the February 15, 2008, deadline for exchanging expert reports.  Rec. Doc. No. 94-2, pp. 2-3

[55]State Farm claims that Hitchcock delivered a supplemental narrative damage report to Lambert's counsel on February 13, 2008.  Rec. Doc. No. 94-2, p. 3.  The report was provided to State Farm on February 15, 2008, the final day for the exchange of expert reports.  *Id. See* also Rec. Doc. No. 22, Scheduling Order.

[56]State Farm argues that, based on Hitchcock's testimony that he is not an engineer or a meteorologist, Hitchcock is not is not qualified to offer expert testimony with respect to the claim of damage to plaintiff's dwelling and garage.  Rec. Doc. No. 94-2, p. 4.

[57]State Farm argues that, in addition to being unqualified to give an expert opinion as to causation, Hitchcock bases his opinions on an unreliable methodology, erroneous or nonexistent facts, and hearsay, such that his testimony is precluded pursuant to the holdings in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993) and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).
Expert testimony regarding inadmissible evidence is governed by Rule 703 of the Federal Rule of Evidence, which provides:

> The facts or data [upon which an expert bases an opinion, if reasonably relied upon by experts in the field,] need not be admissible in evidence in order for the opinion or inference to be admitted.  Facts or data that are otherwise inadmissible shall not be disclosed

sufficient facts or data.

Rule 702 of the *Federal Rules of Evidence* governs the admissibility of expert witness testimony. Fed. R. Civ. P. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).

────────────────────

> to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703; *Moore v. Ashland Chem., Inc.*, 126 F.3d 679, 690 (5th Cir. 1997).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584.  The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (*citing Kumho Tire*, 526 U.S. at 152, 119 S. Ct. at 1176, 143 L. Ed. 2d at 253)).

With respect to the determination of relevancy pursuant to Rule 702 and *Daubert*, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

Concerning Hitchcock's May 24, 2007, narrative damage report, the Court's scheduling order provides that Lambert's expert reports

-24-

were to be obtained and delivered to State Farm no later than February 15, 2008.[58]   State Farm argues, and Lambert does not dispute, that it did not receive Hitchcock's May 24, 2007, narrative damage report until April 11, 2008.[59]   However, Hitchcock's May 24, 2007, report is irrelevant as the supplemental report was timely received and the supplemental report contained all of the information in the original report.

Concerning his supplemental narrative damage report and purported expert testimony, Hitchcock concludes:

> [T]he structural damage sustained on the north side of [Lambert's] home was from hurricane force winds or a tornado.  Heavy structural damage occurred only on the north side of the house, including the demolished/missing, brick 2-car garage.  Mrs. Lambert indicated that a neighbor stayed through the hurricane and said the flood water rose slowly.  There was not a storm surge of water capable of ripping a structure from it's foundation and washing it away."[60]

Having thoroughly reviewed Hitchcock's supplemental narrative damage report, the Court finds that Hitchcock fails to provide sufficient information in support of Lambert's argument that he is qualified to offer expert testimony concerning the cause of structural damage to Lambert's property.[61]

---

[58]Rec. Doc. No. 22, p. 1.

[59]Rec. Doc. No. 94-2, pp. 2-3.

[60]Rec. Doc. No. 94-11.

[61]Hitchcock testified as to the following:

Q:   It's your conclusion after all these supplements have been done

-25-

that tornadic activity occurred at Perrin, Lambert, and Galloway?

A:    It is my conclusion that I don't know what type of wind activity was there.  It would be very high winds.  Whether it was a tornado or not, I don't know.  Was it high winds?  I believe so.  Was it a tornado?  I don't know.  Was it a microburst?  I don't know.  Was it sustained winds in excess of 160 miles an hour?  Probably, to do the kind of damage I've seen via the photographs and the testimony by the eyewitness.

Rec. Doc. No. 94-14, p. 3 (Hitchcock Dep. p. 15).

(BREAK IN TRANSCRIPT)

Q:    And if the only weather expert in this case says that a vortex and tornado are two different things, let me ask you again, does the witness state that a tornado occurred?

A:    He does not state that one occurred, no, he does not, that I've been able to find in his testimony.

Rec. Doc. No. 94-14, p. 4 (Hitchcock Dep. p. 17).

(BREAK IN TRANSCRIPT)

Q:    What's your basis for saying that the damage was caused by a microburst?

A:    Because of the type of damages that were done.  As a matter of fact, the eyewitnesses testified that Mrs. Lambert's brick garage was gone before rising water.

Q:    And to you that means microburst?

A:    That means sustained high winds of some kind, whether it be hurricane force winds, a tornado, because he was not outside looking all of the time, and a microburst of winds, just as that phrase implies, a burst of wind.

Q:    Well, you went back to using the word tornado.  You have no training in what a tornado is, how to locate it or anything else, correct?

A:    Well, common sense would tell you that if someone saw a tornado, then that would be a tornado.

Q:    Who saw a tornado?

A:    He did not see a tornado.

Q:    Okay.  Well, who saw a tornado?

A:    No one to the best of my knowledge has seen a tornado touch down in this neighborhood.

Rec. Doc. No. 94-14, pp. 5-6 (Hitchcock Dep. pp. 18-19).

Hitchcock will not be permitted to testify at trial as to the cause of structural damage detailed in his report unless, outside of the presence of the jury and to the Court's satisfaction, he can establish that he is a qualified expert and that his opinions are based on a reliable methodology.[62]

Accordingly,

---

(BREAK IN TRANSCRIPT)

Q:   But I don't want to leave tornado until you tell me –

A:   Don't want to leave tornado, okay.

Q:   – what's your basis for it, or there is no basis for it?

A:   The basis for it would be the eyewitness was not outside all of the time looking at what was happening to the neighborhood.  If a tornado touched down, it could have been during the few minutes that he had gone back inside to check on his girlfriend that was in the attic.  I don't know.

Rec. Doc. No. 94-14, p. 6 (Hitchcock Dep. p. 19).

(BREAK IN TRANSCRIPT)

Q:   So are we in agreement that you have no evidence of tornado other than hypothetical because the witness wasn't watching when the garage was gone?

A:   **That's correct.  Yes, sir**.

Rec. Doc. No. 94-14, p. 8 (Hitchcock Dep. p. 21) (emphasis added).

[62]The Court notes that Lambert argues that, in forming his opinion, Hitchcock utilized the "Wind & Water Protocol" which is the same method used by State Farm.  Rec. Doc. No. 109, p. 5.  Lambert claims that the aforementioned protocol requires (1) gathering evidence at a site inspection, (2) gathering evidence at neighboring locations, (3) obtaining data from reports describing damage to the area, and (4) obtaining information from witnesses and policy holders.  *Id.*
     Lambert's argument notwithstanding, Hitchcock does not state in his supplemental report that he utilized the "Wind & Water Protocol" in order to form his opinion.  Furthermore, considering the fact that it has not been provided with a copy of the "Wind & Water Protocol," the Court has no way of confirming that Hitchcock utilized that protocol in forming his opinion.
     Having decided to defer this issue until trial, the Court notes that, having read the supplemental report and excerpts from Hitchcock's deposition testimony, it has serious doubts as to whether Hitchcock may testify as to the causation issues.

**IT IS ORDERED** that State Farm's motion for partial summary judgment requesting that it receive an offset for flood payments and that plaintiff be estopped from asserting winds claims pursuant to her homeowner's insurance policy[63] is **DENIED**.

**IT IS FURTHER ORDERED** that State Farm's motion for partial summary judgment requesting that the Court find that plaintiff is not entitled to a fifty-percent (50%) penalty and attorneys' fees pursuant to the amended version of La. Rev. Stat. Ann. § 22:658[64] is **GRANTED**.

**IT IS FURTHER ORDERED** that State Farm's motion for partial summary judgment asserting that Lambert is not entitled to recover insurance proceeds pursuant to Coverage "B" of the homeowner's insurance policy[65] is **DENIED.**

**IT IS FURTHER ORDERED** that State Farm's motion for partial summary judgment asserting that plaintiff is not entitled to recover damages for mental anguish[66] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that State Farm's motion *in limine*[67] to exclude the report and testimony of plaintiff's expert, Steve

---

[63]Rec. Doc. No. 26.

[64]Rec. Doc. No. 27.

[65]Rec. Doc. No. 69.

[66]Rec. Doc. No. 79.

[67]Rec. Doc. No. 94.

Hitchcock is **DEFERRED** until trial.

New Orleans, Louisiana, May 19th, 2008.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE